**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
DEBORAH LAUFER, Individually,

                                          Case No.: 1:19-cv-1462 (BKS/ML)

             Plaintiff, -against-

VILLAGE AT MILLER ROAD, LLC and
CHOICE HOTELS INTERNATIONAL INC.,

             Defendant.
--------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORTOF STANDNG

**LAW OFFICES OF PETER SVERD, PLLC**
Peter Sverd, Esq.
Of Counsel to Thomas B. Bacon, PA
225 Broadway, Suite 613
New York, New York 10007
Tel.: 646-751-8743
psverd@sverdlawfirm.com

## TABLE OF CONTENTS

BRIEF STATEMENT OF ARGUMENT………………………………………………………1-2

STATEMENT OF FACTS…………………………………………….…………………...2-3

POINT I.  THE APPLICABLE STANDARD…………………………………….……...4-5

POINT II.  THE PLEADINGS SUFFICIENTLY ALLEGE STANDING
          UNDER THE AMERICANS WITH DISABILITIES ACT………………………..6-7

     A.PAST INJURY AND INTENT TO RETURN TO LOCUS OF INJURY
        UNDER THE ADA………………………………………………………..……7

          1.     The Pleadings Create a Reasonable Inference of Return…………………8

          2.     Plaintiff's Tester Status Creates the Inference of Future Return……..…8-9

          3.     Case Law Does Not Require that Plaintiff Intent to Travel or
                Patronize the Physical Hotel As A Pre-requisite To Create Past
                Injury or Injury In Fact ………………………………….……………..9-11

          4.     The Statute and Regulations Do Not Require that Plaintiff Intend
                to Travel or Patronize the Physical Hotel As A Pre-requisite To
                Create Past Injury or Injury In Fact…………………………….……12-18

POINT III.  THIS CASE IS NOT MOOT………………………………………..……..18-24

CONCLUSION…………………………………………………………..………………24

## TABLE OF AUTHORITIES

**Cases**

*Alcoa, Inv. v. Bonneville Power Admin.*, 698 F.3d 774, 786  (9th Cir. 2012)……………….……19

*Ali v. Fed. Bureau of Prisons,* 552 U.S. 214, 228 (2008)……………………………..…….……..13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)…………………………….……………5

*Brooke v. A-Ventures, LLC,* 2017 U.S. Dist. LEXIS 193259 (D. Ariz. 2017)……….………...20

*Camacho v. Vanderbilt University* 2019 WL 6528974 (S.D.N.Y. 2019)…………...…….…..6, 9, 12

*Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010)………………………………….……………11,13

*Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*,
765 F.3d 1205, 1211 (10th Cir. 2014)……………………………………………..……………..…8

*Daniel v. T & M Prot. Res., Inc*., 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014)………………4
*De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191(S.D.N.Y. 2016)………..…..21

*DIRECTV, Inc. v. Treesh,* 487 F.3d 471, 477 (6th Cir. 2007)…………………………………………5

*Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*,
2003 U.S. Dist. LEXIS 5145, (S.D. N.Y. 2003)……………………………………………..……20

*Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A*., 722 F.3d 81, 87 (2nd Cir. 2013)…………………4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.,* 528 U.S. 167 (2000)…… 19, 20

*Harty v. Greenwich Hospitality Group, LLC*, 536 F. App'x 154 (2d. Cir. 2013)……...………6, 11

*Harty v. Nyack Motor Hotel, Inc.*, No. 19-CV-1322, 2020 WL 1140783
 (S.D.N.Y. Mar. 9, 2020)…………………………………………………………………….…23, 24

*Harty v. Simon Property Group, L.P.*, 428 Fed. Appx. 69 (2nd Cir. 2011)………………...….8, 11

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)…………………………………..………20

*Haynes v. Hooters of Am., LLC*, 893 F.3d 781 (11th Cir. 2018),…………………………………20

*Heard v. Statue Cruises LLC*, 2017 U.S. Dist. LEXIS 98665 (S.D.N.Y. 2017)…………………..23

*Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323(11th Cir. 2013)……...………8, 9, 13, 15, 16

*In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009)……………………….………..12

 *INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987)……………………………………….…..14

*Kennedy v. Floridian Hotel, Inc.*,  2018 U.S. Dist. LEXIS 207984 (S.D. Fla. 2018)…………...…10

*Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-84  (M.D. Fla. 7/23/18)………...…..9, 10,11, 14

*Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897-WPD (S.D. Fla. 6/6/19)……...………10, 17

*Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111 (M.D. Fla. 2019)……..……9, 10, 11, 12

*Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, (N.D. Ga. 11/5/2019)……………….………..10

*Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)…………………………………..4

*Kreisler v. Second Ave Diner Corp.*, 731 F. 3d 184, 187 (2d Cir. 2013)……………………………6

*Laufer v. The Flagler Of St. Augustine, LLC*, 1:19-cv-268 (N.D. Fla. 4/9/20)……………..……14

*Moore v. Dollar Tree Stores, Inc.*, 85 F. Supp. 3d 1176, (E.D. Cal. 2015)………………………23

*Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal.2007)………..……...20

*National Alliance For Accessibility, Inc. v. McDonalds Corp.*, 8:12-cv-01365
(M.D. Fla. 2013)……………………………………………………………………………………22

*Parks v. Shipwreck Motel, Inc*., 2:20-cv-227, DE 11, p. 5 (M.D. Fla. 5/18/20)……………………7

*Patel v. McElroy*, 143 F.3d  56 (2nd Cir 1997)………………………………………..……..14

*Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist.
 LEXIS 87457  (S.D. Fla. 2018)…………………………………………………….…..…10, 13

*PGA Tour v. Martin*, 532 U.S. 661 (2001)………………………………..……..…… 14, 15

*Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898 (2nd Cir. 1993)………………..……16

*Riverkeeper, Inc. v. Mirant Lovett, LLC*, 675 F. Supp. 2d 337 (S.D. N.Y. 2009)……………...20

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278,1285 (11th Cir. 1997)………..5

*T-Mobile South, LLC v. City of Milton, Ga.*, 728 F.3d 1274, 2013 WL 4750549,
(11th Cir. 2013)……………………………………………………………………………………13

*Thomas Unknown EBY,* 481 F.3d 434, 440 (6th Cir. 2007)………………………………..……..5

*Turner v. Rogers*, 564 U.S. 431, 439-40 (2011)…………………………………………...19

*Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)…………………………………….………19

*Wood v. Byrd*, 2020 U.S. Dist. LEXIS 19838 (S.D. N.Y. 2020)………………………………5

## Statutes

42 U.S.C. Section 12182(a)………………………………………………………13, 14, 15

42 U.S.C. Section 12182(b)(2)(A)…………………………………………….……………13

42 U.S.C. Section 12182(a)………………………………………………….…………..…13,14,15

42 U.S.C. Section 12182(b)(2)(A)(ii)………………………………………………………13

**Regulations**

28 C.F.R. Section 36.302(e)(1)……………………………………………...3 7, 10 ,12,13, 22

28 C.F.R. Section 36.302(e)(1)(iii)(iv) and (v)…………………………………………….…..22

Plaintiff, by and through undersigned counsel, submits this Memorandum In Support of Standing in response to the Order of this Court dated May 7, 2020. Plaintiff appreciates the opportunity afforded by This Court to detail the basis of Plaintiff's standing in accordance with *Spokeo, Inc. v. Robins,* 136 U.S. Ct. 1540, (2016), *Kreisler v. Second Avenue Diner Corp.,* 731 F.3d 184 (2d Cir. 2013), and *Deeper Life Christian Fellowship, Inc. v. Sobol,* 948 F.2d (2d Cir. 1991). For the reasons set forth herein, as well as, those set forth in the Complaint, heretofore filed on The Court's Docket, the Plaintiff has standing in this action.

## BRIEF STATEMENT OF ARGUMENT

The leading cases cited by This Court pertain to physical architectural barriers at physical store or hotel locations and are distinguishable from the website case, at bar.   The Court notes in its Order that Ms. Laufer has not plead or set forth in her affidavit facts indicating that: she has ever travelled to Rensselaer, New York, or anywhere in New York; that she has any reason to travel anywhere in New York; or, any reason to seek lodging anywhere in New York. *Order* at p. 7. Doc 21-1. The commercial websites, themselves, are the public accommodation at issue, and the Plaintiff suffers injury in fact when, from her own home in Florida, she reviews the non-compliant, discriminatory website. The plaintiff is a tester, who checks website online reservation system ("ORS") for ADA compliance of the subject websites and she alleges that she intends to return to the websites in the future. The pleadings and affidavits when taken as true, and all reasonable inferences are attributed to the plaintiff, standing is established.

Additional allegations regarding the Plaintiff's intention in the future to book a hotel room, to travel to the region, what relatives of hers live in the state, the proximity of the physical hotel property to the plaintiffs' planned or intended location that she will visit in the state, are window

dressing in this case; the factual allegations in the record before This Court support the inference that she intends to review the website again in the future, which establish the Plaintiff's standing.

Contrast the analysis in website cases to the physical barrier cases. In physical barrier cases, the Courts have explored the plaintiffs intent to return to the physical public accommodation in the future to determine whether the inference of return is met for standing purposes.  In cases where the physical property, itself, is at issue, the Courts necessarily look to the pleadings (and affidavits) for facts which create the reasonable inference of return. Ie. whether the plaintiff visits the State, what family are in the state, the proximity of the public accommodation to the plaintiffs family, or travel destination. The analysis in website cases are distinguishable because the site of the injury is in the plaintiff's own home, and the intent to return is to the "website" itself- not the physical hotel property.+

## STATEMENT OF FACTS

Plaintiff, is a Florida resident and disabled person within the meaning of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA"), and relies on a wheelchair or cane to ambulate and is vision impaired. In the past, Plaintiff encountered frustration when attempting to book rooms at a hotel (both in New York and out New York) because so few online reservations systems identified or allowed for booking of accessible rooms and contained little or no information about whether the features at the hotel were accessible. In many instances, website claims of "accessibility" had proven to be untrue when she arrived at the hotel.  As a result, Plaintiff became and is considered a "tester" for the purpose of bringing hotel online reservations systems into compliance.

Defendant books rooms for its hotel through an online reservations system (hereinafter "websites", "online reservations systems" or "ORS").   The purpose of the ORS is to enable the

2

Defendant to market their hotels to persons all over the country (including Florida) from the comfort of their own homes, so as to solicit patronage, by providing the public with information so that they can make a meaningful choice in planning trips, and, in some instances, to book a room at the hotel.   As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether all the features at the hotel are accessible.

Prior to the filing of this lawsuit, Plaintiff reviewed the ORS for Defendant's hotel and found that it did not comply with the Regulation. Plaintiff filed the instant action for injunctive relief pursuant to the ADA as well as, damages under a State law claim. Ms. Laufer alleges in her complaint that "(she) is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and their websites are in compliance with the ADA." *See* Complaint at ¶ 2. The Plaintiff further alleges that "[p]rior to the commencement of this lawsuit, (she) visited the ORS for the purpose of reviewing and assessing the accessible features at the Property and ascertain whether it meets the requirements of 28 C.F.R. Section 36.302(e) and her accessibility needs….(and the ORS did not comply)." *See* Complaint at ¶ 11. Plaintiff goes onto allege that "[i]n the near future, Plaintiff intends to revisit Defendant's ORS in order to test it for compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the system to reserve a guest room and otherwise avail herself of the goods, services, features, facilities, benefits, advantages, and accommodations of the Property." *Id.* At ¶ 12.

3

# POINT I.

## THE APPLICABLE STANDARD

At bar, the jurisdictional issue of standing is interwoven with the underlying merits of the claim. As such, all pleadings and statements made by the Plaintiff must be taken as true, and all reasonable inferences drawn in her favor, without considering the credibility of the Plaintiff.   In instances where standing is at issue, any of three Federal Rules of Civil Procedure apply: 12(b)(1); 12(b)(6); and Rule 56.   Under Fed. R. Civ. P. 12(b)(1), a court may make a credibility determination and is not constrained to the plaintiff's allegations, affidavits or other evidence. However, this standard cannot be applied in the case at bar, where "the jurisdictional dispute is interwoven with the underlying merits" of the dispute. *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2nd Cir. 2013). In such instances, the District Court must apply the standards of Rule 56 (applicable to summary judgment) or to 12(b)(6), or leave the issue to be resolved at trial. *Id*. At bar, the issue of Plaintiff's right to injunctive relief (intent to return to the ORS, etc.) is inextricably intertwined with the merits of Plaintiff's claims for injunctive relief, which are based on 42 U.S.C. Section 12188. Thus, the standing issue goes to the very heart of the merits of Plaintiff's federal cause of action. Accordingly, a credibility determination is inappropriate, and the Court must convert any Rule 12(b)(1) motion to either 12(b)(6), or a Rule 56 motion.

The standard applicable to Fed. R. Civ. P. 12(b)(6) is as follows:

> In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); see also *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc*., 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

*Wood v. Byrd*, 2020 U.S. Dist. LEXIS 19838, *9 (S.D. N.Y. 2020).

The standard applicable to Fed. R. Civ. P. 56 is as follows:

> A court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." []. The moving party bears the burden of showing that no genuine issue of material fact exists. []. Accordingly, the Court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor."
> *Kinney v. Artist & Brand Agency LLC*, 2015 U.S. Dist. LEXIS 160465, ** 33-34 (S.D. N.Y. 2015) (citations omitted).

In accordance with the above caselaw and standards, a credibility determination is improper and all pleadings and statements made by Plaintiff must be taken as true and all reasonable inferences be made in her favor. Initial pleadings in Title III ADA actions are governed by the liberal pleading requirements of Fed. R. Civ. P. 8(a).   This Rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). See  also  *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 477 (6th Cir. 2007) ( under the notice pleading standard of the Federal Rules, courts are reluctant to dismiss colorable claims which have not had the benefit of factual discovery. ); *Thomas v. Unknown EBY*, 481 F.3d 434, 440 (6th Cir. 2007).    In order to state a claim under the ADA, a Plaintiff must allege that she "(1) has a disability; (2) is a qualified individual; and (3) was unlawfully subject to discrimination because of [her] disability."  *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278,1285 (11th Cir. 1997).

## POINT II.

## THE PLEADINGS SUFFICIENTLY ALLEGE STANDING UNDER THE AMERICANS WITH DISABILITIES ACT

In the context of ADA cases seeking injunctive relief for the removal of physical architectural barriers, the Second Circuit Court of Appeals found standing where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' restaurants to plaintiff's home, that plaintiff intended to return to the subject location." *See Kreisler v. Second Ave Diner Corp.,* 731 F. 3d 184, 187 (2d Cir. 2013)(internal citation omitted).   The Court in *Kriesler,* further stated that in order to have standing to seek injunctive relief, the plaintiff must also establish that the identified injury in fact presents a "real and immediate threat of repeated injury." The Second Circuit Court later pronounced the standing (injury in fact) requirements in ADA cases which sought injunctive relief to remove physical architectural barriers, to require the plaintiff to (i) allege past injury under the ADA (ii) show that it is reasonable to infer from his or her complaint that the discriminatory treatment will continue, and (iii) show that it is reasonable to infer that he or she intends to return to the public accommodation."   *See, Harty v. Greenwich Hospitality Group, LLC*, 536 Fed. Appx. 154, 155 (2013).

The Southern District Court, in s recent. holding in *Camacho v. Vanderbilt University,* 2019 WL 6528974 at p. 11 (S.D.N.Y. 2019), reviewed standing in a website accessibility case, and rejected the defendant's citation and reliance upon physical barrier property cases, specifically, *Harty v. Greenwich Hospitality Group, LLC*. The court found standing, reasoning that the plaintiff "need not have shown that he intends to "return' to defendants school in Nashville, Tennessee. He

is only required to… establish a reasonable inference that he intended to return to the website….” *See also, Parks v. Shipwreck Motel, Inc*., 2:20-cv-227, DE 11, p. 5 (M.D. Fla. 5/18/20)(rejecting reference to physical property cases because they were inapposite to hotel ORS cases).

At bar, the plaintiff's allegations that “she will revisit the hotel's online reservations system again in the near future” must be taken as true, and the inference of return to the website (the accommodation at bar) is met for standing purposes. The Court cannot deny standing on the basis that it disbelieves her pleadings that she suffered injury in fact, intends to return the website in the future, or that she must allege a physical nexus or proximity to the physical hotel property.

## A.

## PAST INJURY AND INTENT TO RETURN TO LOCUS OF INJURY UNDER THE ADA

The Plaintiff's allegation that she suffered discrimination from the non-compliant website when she viewed it from her home in Florida, is proof of injury in fact, and her allegation that she is a tester of the website, and intends to return to the website in the future to test its compliance, more than sufficiently support the inference of return, and satisfies her standing to bring this action. Neither 42 U.S.C. Section 12182 et. Seq., nor 28 C.F.R. Section 36.302(e)(1), require that the plaintiff intend to be a customer or patron of the public accommodation in order to suffer injury in fact, or to satisfy the inference of return to the accommodation.   It naturally follows, that the case law in the field of hotel website accommodation do not require that Ms. Laufer allege facts that she intend to be a customer or patron of the physical hotel public accommodation in order to suffer injury in fact, or the inference of return. The absence of allegations that she has ever travelled to Rensselaer, New York, or anywhere in New York, or any reason to seek lodging anywhere in New York, is not a legal requirement to establish injury in fact, in this case.

7

### 1. Plaintiff's Tester Status Creates the Inference of Future Return

It has been recognized that testers with a stated goal of ensuring ADA compliance, have motivation to return to the offending locus of injury, and that the status or allegation that plaintiff is a tester supports the inference of return. Testers have standing under Title III of the ADA.   *Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), *citing Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1333-34 (11th Cir. 2013).

The Second Circuit Court of Appeals for the State of New York held that a plaintiff's allegation of intent to return as a tester contributed to satisfying the intent to return /standing requirement under the ADA. The Court. Held, that "Harty's allegations are sufficient, for pleading purposes, to establish ADA standing based upon a plausible intention to return to the Nanuet Mall. The amended complaint alleges that Harty plans to return both as a patron "to avail himself of the goods and services offered to the public at the property" and as a tester "to determine whether the property has been made ADA compliant."   *Harty v. Simon Property Group, L.P.*, 428 Fed. Appx. 69, 71 (2nd Cir. 6/29/2011).

Other courts have similarly held that status a tester "plausibly increases the likelihood that she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019), *citing Kennedy v. Gold Sun Hospitality, LLC*, No. 8:18-cv-842-T-33CPT, DE 23, pp. 31-32 (M.D. Fla. 7/23/18). In *Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, 1:04-cv-6060 (D.N.J. 2006), after considering the plaintiff's 100 ADA lawsuits, the court rejected defendant's motion for summary judgment and held the plaintiff's motive to be irrelevant.   The court reasoned that: "because Plaintiff Esposito

8

is a frequent litigant with the stated goal of ensuring ADA compliance, his claim of intent to return to the [hotel] to do additional examinations is made more, not less, credible." *Id*. at 17.  *Marod*, 733 F.3d at 1336 (explaining that plaintiff's status as a tester indicated that he would revisit the property many times and therefore tended to show a real and immediate threat of future injury); *Parks v. Shipwreck Motel, Inc*., 2:20-cv-227, DE 11, p. 6 (M.D. Fla. 5/18/20)(tester with system of returning satisfies future injury requirement of standing).

**2.  Case Law Does Not Require that Plaintiff Intent to Travel or Patronize the Physical Hotel As A Pre-requisite To Create Past Injury or Injury In Fact**

 Injury in hotel website discrimination occurs in the comfort of the plaintiff's own home and the disabled person's encounter with the discriminatory website constitutes injury and satisfies the injury-in-fact requirement. The plaintiff need not have an intent to travel or patronize the physical premises.  The Southern District Court in *Camacho v. Vanderbilt University* 2019 WL 6528974 (S.D.N.Y. 2019), upheld standing where the plaintiff encountered the defendants website in Brooklyn, New York, at which time he was unable to discern information that he regarded necessary to determine whether or not he would be interested in visiting the school. The Court, correctly did not inquire as to whether the plaintiff intended to visit the school, how often he had visited Tennessee, whether he had good enough grades to get into the school, or whether he had dreamed as a child to attend Vanderbilt. *See also, Poschmann v. Fountain, TN, LLC,2019 U.S. Dist. Lexis 159417 \*5 (M.D.Fla. 2019)*(issue was plaintiff's visit to website rather than physical hotel); *See also, Parks v. Shipwreck Motel, Inc*., 2:20-cv-227, DE 11, p. 5 (M.D. Fla. 5/18/20))(issue was plaintiff's visit to website rather than physical hotel); *See also,  Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897-WPD, DE 34 (S.D. Fla. 6/6/19)(recognizing that the plaintiff suffered an injury-in-fact when she encountered defendant's discriminatory website, the injury

was caused by defendant's failure to provide the requisite information on the website, and the injury will likely be redressed if injunctive relief is granted requiring defendant to modify its website to comply with the ADA's requirements). See also *Sai Ram Hotels*, 2019 U.S. Dist. LEXIS 80111; *Kennedy v. Floridian Hotel, Inc.*,   2018 U.S. Dist. LEXIS 207984, at \*9 (S.D. Fla. 2018) ("[T]he Court finds that Plaintiff has shown that she suffered an injury-in-fact when she encountered the ADA violations on the Website.");   *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457   (S.D. Fla. 2018)("[I]f Defendant's Website is non-compliant with § 36.302(e)(1), Plaintiff has suffered an injury-in-fact.");   *Gold Sun,* at pp. 30-31, (M.D. Fla. June 18, 2018)(plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website); *Laufer v. The Flagler Of St. Augustine, LLC*, 1:19-cv-268, DE 12 (N.D. Fla. 4/9/20). In *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019), a court held that "visiting the website suffices" and that a "plaintiff's inability to fully and effectively use an establishment's website constitutes an injury-in-fact."

Ms. Laufer suffered injury in fact when encountered the discriminatory website from her own home in Florida. There is no additional requirement that she visit the hotel or its website with the intent to book a room at the hotel.

This Court has framed the standing inquiry, at bar, against the legal standards and case law set forth in *Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 155 (2d Cir. 2013), *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013), and *Harty v. Simon Prop. Group, L.P.*, 428 F. App'x. 69 (2nd Cir 2011).   These cases are distinguishable from the case at bar. In each of these cases, the courts considered such factors as the distance from the Plaintiff to the physical property and the frequency of travel to the area of the physical property, as a means to measure standing; past injury and whether the inference of plaintiff's intention to return to the

10

public accommodation is inferred (Hereinafter "Proximity Test"). However, these cases involved discrimination the plaintiffs encountered architectural barriers when they visited the physical property. The plaintiff in each case would not again encounter the discrimination complained of, unless and until he or she subsequently traveled back to the physical property.

By contrast, by virtue of its online reservation system, the Defendant reaches out into Plaintiff's own home. It is in her home when she reviewed the ORS, it was in her home that she encountered discrimination, and it is in her home where she encounters discrimination again when she reviews the ORS, pursuant to the system she has implemented and to which she adheres.

The four part Proximity Test (which analyzes such factors as the distance from the plaintiff's residence to the physical property) is inapplicable to cases involving hotel online reservations systems, where the injury in fact is suffered when the person encounters the ADA violations on the website. *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842, DE 23, pp. 30-31 (M.D. Fla. 7/23/18);   *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019).   Another court has held that the Proximity test not applicable to commercial websites (in vision impaired discrimination) because (1) website cases do not involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017).   "The relevant 'future injury' inquiry relates to the [hotel's] website and reservation system, rather than the [hotel's] physical property. *Sai Ram*, 2019 U.S. Dist. Lexis 80111, at *11.[1] *See also, Camacho.*

---

[1]The proximity test is not applicable in the context of hotels because hotels are, by nature, established to accommodate travelers from afar.. *Bodley v. Plaza Management Corp.*, 550 F.Supp.2d 1085, (D. Ariz. 2008);   *Parks v. Shipwreck Motel, Inc*., 2:20-cv-227, DE 11, p. 5 (M.D. Fla. 5/18/20); *D'Lil v. Best Western Encina Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006); *Access 4 All, Inc. V. Wintergreen Commercial P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); .   *Access 4 All, Inc. v. 539 Absecon Blvd*., 2006 WL 1804578, at

**3.** **The Statute and Regulations Do Not Require that Plaintiff Intend to Travel or Patronize the Physical Hotel As A Pre-requisite To Create Past Injury or Injury In Fact**

Neither 42 U.S.C. Section 12182 et. Seq., nor 28 C.F.R. Section 36.302(e)(1), require that the plaintiff intend to be a "customer or patron" of the hotel public accommodation in order to suffer injury in fact, or create the inference of future return in website accessibility cases.   An interpreting Court must look to the plain language of the Statute and Regulation in analyzing whether a disabled person who encounters a discriminatory online reservations system has a cause of action or whether they must ADDITIONALLY intend to travel to, book a room, or become a customer or patron of the hotel, let alone ADDITIONALLY encounter discriminatory conditions located at the physical hotel premises. The requirement is nowhere in the Statute or Regulations that are the subject of this lawsuit, and the Court cannot create the requirement in the face of a clear and unambiguous statute.

"Statutory interpretation always begins with the plain language of the statute,' which [the court] consider[s] in 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009).   If the language is unambiguous, no further inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010). "Our duty is to say what statutory language means, not what it should mean, and not what it would mean if we had drafted it." *Marod*, 733 F.3d at 1333-34 (addressing tester standing), citing *T-Mobile South, LLC v. City of Milton, Ga.*, 728 F.3d 1274, 2013 WL 4750549, at *10 (11th Cir. 2013).   "We are not at liberty to rewrite the statute to reflect a meaning we deem more

---

*3 (D.N.J. 2006).   Indeed, at least one court has ruled that a plaintiff who lives **too close** to a hotel has no standing to sue for compliance. See *Access 4 All, Inc. v. Thirty East 30th Street, LLC*, 1:04-Civ-3683, DE 36, at 17 (S.D.N.Y. 12/11/06).

desirable." *Marod*, 733 F.3d at 1334, citing *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*.

Plaintiff's claims are based 42 U.S.C. Section 12182(a), which provides:

(a) General rule
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations 42 U.S.C. Section 12182(b)(2)(A)(ii).

This latter subsection is the subject of regulations promulgated by the Department Of Justice ("DOJ").[2] Specifically, the DOJ promulgated 28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), which provides:

(1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
(iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;

[2]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA. *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018).

(iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and

(v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

The statute and rules do not require that the plaintiff "be" or intend to be a customer or patron of the public accommodation in order to suffer injury in fact.   Contrast the provisions relied upon in this case (12182(a)), against 12182(b)(1)(A)(iv), which specifically, provides that   the term "individuals or class of individuals" contained in 12182(b)(1)(A) clauses (i) through (iii) "refers to the clients or customers of the covered public accommodation…."   Because the "client and customer" language is found elsewhere in the Statute, and not in the provisions governing the case at bar, it is reversible error for The Court to add, supply, or impute any such legal requirement in the statute- or in this case.

 "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."   *INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987); see also *Patel v. McElroy*, 143 F.3d   56, 60 (2ₙd Cir 1997).   In *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), a reasonable accommodation case in which a professional golfer sued to be permitted to use motorized golf cart during play, the defendant had argued that the plaintiff had no standing to sue unless he was a "client or customer" of the place of public accommodation. The Court rejected this argument reasoning that the Statute's "client or customer" limitation was set forth in only one Subsection of the Statute, and was omitted from the provisions at issue in the

case before it. Specifically, Section 12182(b)(1)(A)(iv) contained the "clients or customers" limitation, and the Subsection 12182(a)3 did not contain the limiting language.

The Court stated that: "clause (iv) is not literally applicable to Title III's general rule prohibiting discrimination against disabled individuals. Title III's broad general rule contains no express "clients or customers" limitation..." *PGA Tour*, 532 U.S. at 679 (citing Subsection 12182(a)). Therefore, as the Supreme Court observed, limiting language contained in one Subsection of Title III cannot be applied to other Subsections of the same statute where that language is missing.

This "client or customer" analysis was similarly applied by the *Marod* Court when it held that testers have standing, that they do not need to be a client or customer, and that their motive is irrelevant. 733 F.3d at 1333-34. In *Marod*, a physical architectural barrier case, the Eleventh Circuit held that a disabled tester has standing to pursue a Title III ADA case for violations of 42 U.S.C. Section 12182. The Court reasoned that "Plaintiff's status as tester, rather than bona fide patron, did not deprive him of standing to maintain action for injunctive relief under section of the ADA governing public accommodations; statute's plain language conferred on him legal right to be free from discrimination on basis of disability … and legal right did not depend on motive behind his attempt to enjoy supermarket's facilities." *Id. At* 1332.   However, the *Marod* Court additionally relied heavily on other similar opinions involving different language and applying the rules of statutory construction. In *Marod*, the Eleventh Circuit considered other cases applying other civil rights statutes. Among these was *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), discussed by the *Marod* Court at 733 F.3d at 1330. As noted by *Marod* regarding *Havens*:

---

3Subsection 12182(a) is the same Subsection that governs the instant action.

15

The Supreme Court concluded that a black tester who was misinformed about the availability of a rental property had alleged sufficient injury-in-fact to support standing to sue under § 804(d) of the FHA. Id. at 374, 102 S. Ct. at 1121-22. The plaintiff-tester in Havens Realty never intended to rent the apartment; rather, his sole purpose was to determine whether the defendant engaged in unlawful practices. *Id*.

In *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898 (2nd Cir. 1993), the Second Circuit held that individuals had standing to sue under the Fair Housing Act for the defendant's placement of display advertising for residential apartments in the newspaper because all the models portrayed in the ad were white. The Court rejected the defendants argument that the plaintiffs should have been denied standing because the plaintiffs "were not in the market for housing when they saw the discriminatory ads in the newspapers but instead were actively combing newspapers looking for these ads in order to bring (a discrimination action)" *Id. At* 904.

At bar, the ADA plaintiff does not have to be a client or customer or a bona fide customer and his or her motive or intent are entirely irrelevant. All that is required is that Ms. Laufer encounter discrimination within the plain meaning of the words of the statute. This includes discrimination in the form of information, and without express statutory or regulatory restriction to the contrary, there is no requirement that she intend to use or visit the physical property,

To the extent there is any room for doubt, there is in fact another subsection of the Statute which does contain language imposing a physical nexus requirement. 42 U.S.C.   Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities ***from*** fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

In that Subsection, the word "from" is critical because its insertion in the Subsection means that a disabled person's encounter with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria prevents them "from" full and equal access to goods or services. This word, however, is conspicuously absent from either the Statute's Subsections or the Regulation that govern online reservations systems.  Because an ORS is a "service" of the place of public accommodation, and failure to comply with the Regulation qualifies as "discrimination", then nothing more is necessary. When a disabled person encounters a non-compliant ORS, he has been "discriminated against on the basis of disability in the full and equal enjoyment of   ... services, ..., privileges, advantages..."

Thus, the plaintiff has standing and there is no additional requirement that they actually visit the hotel or intend to book a room.

Many courts have upheld the sufficiency of virtually identical pleadings, as in the case at bar, and have rejected challenges against standing. See, e.g., *Kennedy v. New Yorker Hotel Miami, LLC*, 18-62897, DE 34 (S.D. Fla. 6/6/19); *Kennedy v. Patel Brothers, Inc*., 19-60613, DE 23 (S.D. Fla. 6/6/19);   *Kennedy v. Guru Krupa, Inc.*, 0:18-cv-63088-WPD, DE 18 (S.D. Fla. 2/26/19)(denying motion to dismiss); and *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19)(denying motion to dismiss).   Numerous courts have also considered such allegations as sufficient when they granted default judgment. See *Kennedy v. Yaish & Tish Ltd., LLC*, 19-cv-61992-RAR, DE 14 (S.D. Fla. 9/27/19);    *Kennedy v. Londamerican Real Estate Ltd.*, 19-cv-61228-SMITH/VALLE, DE 18 (S.D. Fla. 8/21/2019); *Kennedy v. Guruhari Hospitality*, LLC, 0:19-cv-61139-WPD, DE 18 (S.D. Fla. 7/11/2019); *Kennedy v. Moreno*, 19-60550-CIV-ALTMAN, DE 20, (S.D. Fla. 6/26/2019);   *Kennedy v. Pacifica Tampa Ltd Partnership*, 5:17-cv-

442-JSM-PRL, DE 7 (M.D. Fla. 1/25/18). *Kennedy v. Fernandez*, 19-60876, DE 18 (S.D. Fla. 6/11/2019);   *Kennedy v. Astoria Hotel Suites, LLC*, 19-cv-60160, DE 17 (S.D. Fla. 3/22/19); *Kennedy v. Dockside View, LLC*, 2:18-cv-14444-KAM (S.D. Fla. 1/19/19); *Kennedy v. Cape Siesta Motel, LLC*, 18-81811, 0:18-cv-61811-MGC, DE 20 (S.D. Fla. 1/18/2019); *Kennedy v. Shivnit, Inc.*, 0:18-cv-63094-UU, DE 12 (S.D. Fla. 1/30/19); *Kennedy v. Terrace Park Suites, LLC*, 0:19-cv-60012-DPG (S.D. Fla. 3/21/19); *Kennedy v. Shree Ram Jalaram, Inc.*, 19-60708, DE 13 (S.D. Fla. 4/18/2019).

## POINT III.

## THIS CASE IS NOT MOOT

This Court also raised the issue that Plaintiff's claims are moot, reasoning that the Defendant's online reservations system operated through Booking.com identifies and allows for booking of accessible rooms. However, Defendant continues to utilize Orbitz, Expedia and Hotels.com[4] to book rooms at its hotel - which all remain completely non-compliant.

The fact that only one of four websites may be compliant does not moot a case. Defendant continues to offer its online reservations services through multiple websites and continues to discriminate against the Plaintiff. Failure to comply with the Regulation's requirements is discrimination because it is not "full and equal enjoyment of the ... services of..." the Defendant. Disabled persons searching for area hotels have only a one-in-four chance of avoiding discrimination.  For example, if a defendant fixes only one handicap parking space, leaving the remainder of its facility riddled with ADA physical barriers, such would not moot a case.  Quite simply, it remains that the Plaintiff has a 75% chance of encountering discrimination by the

Defendant.   Relevant to the issue of mootness is whether the same complaining party will likely suffer from the same wrongful conduct again from the same defendant. See *Turner v. Rogers*, 564 U.S. 431, 439-40 (2011);   *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *Alcoa, Inv. v. Bonneville Power Admin*., 698 F.3d 774, 786   (9th Cir. 2012).

"A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."   *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 190 (2000).

As the United States Supreme Court held:

> [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. ...A controversy may remain to be settled in such circumstances, ...e.g., a dispute over the legality of the challenged practices. ...The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.
>
> *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953)(citations omitted).

According to the "general rule" a mootness defense should "rarely" succeed.   See *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 998 (7th Cir. 2002)("The general rule is that voluntary cessation of a challenged practice rarely moots a federal case.");   *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001)(same);   *Friends of The Earth*, 528 U.S. at 189 ("a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc*., 484 U.S. 49, 66-67 (1987) ("Mootness doctrine ... protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.' "). Put another way, the standard for determining whether a defendant's voluntary cessation of illegal behavior

moots a case is "stringent". *Friends Of The Earth*, 528 U.S. at 189. *Riverkeeper, Inc. v. Mirant Lovett, LLC*, 675 F. Supp. 2d 337, 347 (S.D. N.Y. 2009); *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 U.S. Dist. LEXIS 5145, ** 37-38 (S.D. N.Y. 2003).

Several courts have stated that ADA discrimination cases involving websites cannot be mooted. Even if this Court were to hold that Defendant's entire ORS is presently compliant, it still cannot hold Plaintiff's claims to be moot. In *Hooters*, 893 F.3d at 784, the Eleventh Circuit addressed the issue of asserting a mootness claim in a case involving website discrimination:

> Relatedly, Haynes requested in his complaint that the district court direct Hooters to continually update and maintain its website to ensure that it remains fully accessible. Accordingly, even if Hooters' website becomes ADA compliant, Haynes seeks injunctive relief requiring Hooters to maintain the website in compliant condition. Thus, ... , there is still a live controversy about whether Haynes can receive an injunction to force Hooters to make its website ADA compliant or to maintain it as such. Therefore, this case is not moot.

(Emphasis supplied.)

At least two other courts have held that a defendant cannot moot an ADA case simply by making its website compliant. *See Nat'l Fed'n of the Blind v. Target Corp*., 582 F. Supp. 2d 1185 (N.D. Cal. Sept. 28, 2007) (cannot moot because of the "potential for new pages"). One court held that a hotel cannot moot a discrimination case involving hotel online reservations discrimination. *Brooke v. A-Ventures, LLC*, 2017 U.S. Dist. LEXIS 193259 ** 6-7 (D. Ariz. Nov. 22, 2017). In *Brooke*, the defendant had made assurances of future compliance similar to those made by the instant Defendant in the case at bar. The court rejected these claims on the basis that:

> "Similarly here, all defendant has done is change its website and adopt a new internal policy, both of which could easily be changed in the future. Defendant has not met its heavy burden of showing that it is absolutely clear that its wrongful behavior could not reasonably be expected to recur. This case is not moot."

In the context of the ADA, physical property and website cases stand apart from one another. ADA website cases are distinguishable from other ADA cases in which district courts grant mootness dismissals with greater readiness. In this regard, a prior opinion rendered by another court in this District sheds light:

> "In ADA cases involving architectural barriers remedied by structural changes, some courts have found that the conduct reasonably would not recur because the defendants would have no reason to alter the structural changes back." *Scott v. Cash To Go, Inc.*, No. 6:13-cv-142-Orl-37KRS, 2013 U.S. Dist. LEXIS 59980, 2013 WL 1786640, at *2 n.2 (M.D. Fla. Apr. 26, 2013) (citing *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 99 (D.D.C. 2007) ("The alleged discrimination cannot reasonably be expected to recur because 'structural modifications ... are unlikely to be altered in the future.'" (quoting *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 774 (D. Or. 1997)))). "Such cases can be contrasted with those where ADA non-compliance flows from an easily changeable policy." Id. (citing *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 (11th Cir. 2007) ("If we conclude that her claims are moot, then should MRN determine that future litigation is unlikely, it may well calculate that its new policy is no longer the preferable course of action and revert to the old policy it prefers and apparently believes to be legal.")); see also *Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 97 (D.D.C. 2014) ("'[G]iven the ease with which defendants could stop providing captioning, we simply cannot say that they have made an affirmative showing that the continuation of their alleged ADA violations is "nearly impossible."'" (quoting *Feldman v. Pro Football, Inc*., 419 F. App'x 381 (4th Cir. 2011))).

Courts also reject mootness challenges where the claimed ADA-corrective changes "consist[] largely of promises that [the defendant] will fulfill in the future." *Gropper*, 12 F. Supp. 3d [664] at 670 [(S.D. N.Y. 2014)] (emphasis in original). *De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D. N.Y. 2016).   See also *Houston v. 7-Eleven, Inc*., 2014 U.S. Dist. LEXIS 12209, at **5-6 (S.D. Fla. 1/31/2014) (Scola, J.)(emphasis added) (stressing that ADA cases involving structural barriers are a unique subset of the voluntary cessation doctrine because they are permanent in nature and not likely to be undone);   *Scott v. Cash To Go, Inc*.,

21

2013 U.S. Dist. LEXIS 59980, n. 2 (M.D. Fla. Apr. 26, 2013)(recognizing the importance in assessing mootness whether or not remediations were structural and therefore permanent).

With respect to mootness in the context of the ADA, website cases starkly contrast claims involving structural elements. Whereas structural elements are regarded by courts as being permanent in nature and not likely to be undone, website cases are fluid. Online reservations systems are updated on a daily basis, with changes in pricing and room availability. Information to the host's own website and third party providers is exchanged and updated constantly. Websites are also generally completely revised on a periodic basis. Accordingly, because future conduct is at issue, the case cannot be moot. *600 Broadway Partners,* 175 F.Supp.3d at 201, citing *Gropper*, 12 F. Supp. 3d at 670.

Moreover, adherence to the Regulations requirements are not limited to the provision of information and identification and booking of accessible rooms. It additionally includes the necessity that the accessible rooms be reserved and blocked so that only disabled persons may book them. 28 C.F.R. Section 36.302(e)(1)(iii)(iv) and (v). All the Defendant has to do is lapse in its affirmative obligations of continuing and future compliance. In *National Alliance For Accessibility, Inc. v. McDonalds Corp.*, 8:12-cv-01365, p. 11-12 (M.D. Fla. 12/06/13), a court denied a defendant's motion for summary judgment based on mootness. The court held that because the specifications required by the ADA evolve, an entity which fails to comply with these evolving requirements cannot moot a case by waiting until a lawsuit is filed before it complies. Defendants in such cases, are guilty of an "ongoing indifference" to the ADA's changing requirements. In this regard, the Court noted the revisions to the ADA that occurred with the promulgation of the 2010 ADA Standards. The court held that a defendant's:

"duty to comply is a continuing duty. The absence of complaints by disabled individuals does not completely explain Defendants' non-compliance with the ongoing requirements of the ADA. At this point any such entity has had a substantial opportunity to familiarize itself with the provisions of the ADA, as they evolve, and to comply with those provisions. ...

Defendant's implementation of a new policy and removal of the architectural barriers does not eliminate the possibility of future violation, when the requirements of the ADA have been well publicized for many years. The requirements of the ADA have not remained fixed, and it is incumbent on Defendants to take note of evolving requirements. In this case, Defendants took no action to comply with the current requirements until after this case was filed. The risk remains that Defendants will resume the challenged conduct after this case is dismissed.

The court further held that: "While some aspects of this case may have become moot, the Court finds that, at a minimum, the scope of an injunction directed to maintenance and future compliance remains at issue."  *Id.*  p. 12. *See also Moore v. Dollar Tree Stores, Inc.*, 85 F. Supp. 3d 1176, (E.D. Cal. 2015) (even after defendant fixed the operational pressure of exterior doors, evidence was disputed as to whether they reasonably could be expected to lapse into noncompliance); *Heard v. Statue Cruises LLC*, 2017 U.S. Dist. LEXIS 98665 (S.D.N.Y. June 26, 2017)(a defendant cannot moot a case because the defendant could simply cease to implement the measures to ensure continued compliance in the future).

As in *Heard*, the Defendant is under a continuing, future and affirmative obligation to ensure that its daily booking system, system of blocking and reserving rooms for the disabled, and posting required information on its ORS continue to comply with the Regulation.

This Court cited *Harty v. Nyack Motor Hotel, Inc*., 2020 U.S. Dist. Lexis 40429, 2020 WL 1140783 (S.D. N.Y. 2020), for the proposition that a hotel's online reservations case can be mooted. However, the *Nyack Motor Hotel* decision did not consider any of the applicable case law cited above and is against the overwhelming weight of authorities to the contrary.

For the reasons stated above, Plaintiff's claims are not moot.

## CONCLUSION

For the foregoing reasons, Plaintiff has standing and this case is not moot.


Dated: New York, New York
       May 28, 2020

Respectfully submitted,

Peter Sverd, Esq.

24